THE HON. WILLIAM L. HOLLOWAY,

---

TURK, RESPONDENT, v. RUDMAN, APPELLANT.

(No. 2,860.)

(Submitted September 14, 1910. Decided October 6, 1910.)

[111 Pac. 739.]

*Promissory Notes—Defenses—Fraud—Rescission of Contract—
Failure to Ask for.*

1. In an action to recover on a promissory note, given as part of the purchase price of an interest in a coal mining lease, the defendant charged that he was induced by fraud, on the part of the plaintiff, to enter into the contract. The evidence showed that after full knowledge of the facts constituting the alleged fraud, defendant contracted with plaintiff for a different interest in the lease, for the same consideration; was anxious to work the property; made partial payments on the note; and took no steps whatever to rescind until after the commencement of the action, some ten months subsequent to the second agreement. *Held*, that under these circumstances the district court properly found in favor of plaintiff.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

42 Mont.—1 (1)

ACTION by John Turk against John Rudman. From a judgment for plaintiff, and an order denying his motion for a new trial; defendant appeals. Affirmed.

*Messrs. Mackel & Meyer* submitted a brief in behalf of Appellant. *Mr. Alex. Mackel* argued the cause orally.

On behalf of Respondent, *Messrs. Barta & Barta* submitted a brief.

Rudman alleges fraud, and the burden was upon him to make good his allegations by clear and satisfactory evidence, such as would preponderate over the presumption of innocence. (*Butte Hardware Co.* v. *Knox,* 28 Mont. 111, 72 Pac. 301; *Power & Bro.* v. *Turner,* 37 Mont. 521, 543, 97 Pac. 950; *McCarthy* v. *White,* 21 Cal. 495, 82 Am. Dec. 754; *Marsh* v. *Cramer,* 16 Colo. 331, 27 Pac. 169; *Penn Life Ins. Co.* v. *Savings Bank,* 72 Fed. 413, 19 C. C. A. 286, 73 Fed. 653, 19 C. C. A. 316, 38 L. R. A. 33; *New York Life Ins. Co.* v. *Davis,* 96 Va. 737, 32 S. E. 475, 44 L. R. A. 305.) Under section 5011 of the Revised Codes, the burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it. (*Mueller* v. *Renkes,* 31 Mont. 100, 77 Pac. 512; *Noyes* v. *Young,* 32 Mont. 226, 79 Pac. 1063; *Castor* v. *Bernstein,* 2 Cal. App. 703, 84 Pac. 244.)

Making payments upon the note many months after the discovery of the error or mistake relative to the location of the tunnel, as Rudman did, renewing the note, making a new contract, or remaining in possession and making improvements, amounted to a ratification. (*Grindrod* v. *Anglo-American Bond Co.,* 34 Mont. 169, 85 Pac. 891; *Morgan* v. *Nowlin,* 126 Mich. 105, 85 N. W. 468; *Young* v. *Shepard's Estate,* 124 Mich. 552, 83 N. W. 403; *Davis* v. *Henry,* 4 W. Va. 571, 6 Morr. Min. Rep. 680; *Lee* v. *McClelland,* 120 Cal. 147, 52 Pac. 300; *Vaughn* v. *Smith,* 34 Or. 54, 55 Pac. 99.)

In matters of opinion every one is presumed to rely upon his own judgment. Statements that a mine is rich in coal, that a certain profit would be made, that the ore on the dump would

pay for the value of the stock, that large dividends would be paid, that a well will supply water for a certain number of cattle, as to the quantity of wood which the timber upon property would make, of the quality of the soil beneath the surface, and estimates of amounts and quantities, are each mere predictions and hence matters of opinion only, on which the purchaser is not justified in relying, and therefore not actionable. (Page on Contracts, sec. 98; *Lawrence* v. *Gayetty*, 78 Cal. 126, 12 Am. St. Rep. 29, 20 Pac. 382; *Gordon* v. *Butler*, 105 U. S. 553, 26 L. Ed. 1166; *Fargo Gaslight & Coke Co.* v. *Fargo G. & E. Co.*, 4 N. D. 219, 59 N. W. 1066, 37 L. R. A. 593; *Southern Development Co.* v. *Silva*, 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed. 678; *Tuck* v. *Dowing*, 76 Ill. 71, 7 Morr. Min. Rep. 84, 104; *Butte Hardware Co.* v. *Knox*, 28 Mont. 111, 72 Pac. 301; *Sheldon* v. *Davidson*, 85 Wis. 138, 55 N. W. 161; *Bondurant* v. *Crawford*, 22 Iowa, 40; *Longshore* v. *Jack*, 30 Iowa, 298.)

MR. JUSTICE SMITH delivered the opinion of the court:

The plaintiff began this action in the district court of Silver Bow county to recover the sum of $840, alleged to be due upon a certain promissory note for $1,000, dated October 8, 1907, upon which the sum of $160 had been paid. The defendant for answer alleged that prior to the date of the note the plaintiff represented to him that he (the plaintiff) was interested in a lease of certain coal lands near Chestnut, Montana; that the land was valuable as containing coal which could be mined at great profit; that plaintiff induced the defendant to accompany him to a piece of land which plaintiff represented as the premises in question, and, upon arriving at a certain point, the plaintiff pointed out to the defendant a place which had been excavated and which had the appearance of a coal mine, and from which considerable coal was being extracted and from which coal could be mined at a great profit, and stated to the defendant that the said place and coal mine were on the premises mentioned in the lease, and that all of said premises described in the lease were very valuable on account of the fact

that they contained coal in great quantities, which could be mined and sold at a great profit; that in truth the place shown to defendant by the plaintiff was not valuable for the mining of coal, and the premises did not contain coal which could be mined and sold at a profit, and were valueless for the purpose of coal mining; that the representations so made by the plaintiff were false and fraudulent; that plaintiff knew that they were false and untrue, and made the same in a positive manner and in a manner not warranted by the information which he had with reference thereto; that the parties are relatives, and the defendant at all times had great faith and confidence in the plaintiff, and believed all of the statements made by him and did all of the things mentioned in the answer, believing the statements of plaintiff to be true; that, on account thereof, defendant was induced to sign the note mentioned in the complaint, "and at the same time by and through the same false and fraudulent representations the plaintiff induced the defendant to accept a certain contract marked 'Exhibit B' (hereafter set forth); that no consideration of any kind whatsoever then or at any time or at all ever passed from the defendant to the plaintiff for the execution of the note mentioned in the complaint, and the same is null and void for want of consideration, entire failure of consideration, and because the defendant was induced to sign the same by the false and fraudulent representations made by the plaintiff to the defendant, and because defendant's signature thereto was secured by fraud." In addition to the foregoing, the answer contains a counterclaim, wherein it is alleged that, in addition to the promissory note mentioned in the complaint, the defendant at the same time gave to the plaintiff the sum of $1,500 in cash under the same false and fraudulent representations, and judgment is demanded in favor of defendant for $2,500 and costs. The lease for the alleged coal mine mentioned in the answer reads as follows:

"EXHIBIT A.

"This lease and agreement made and entered into by and between Mike Novack and Mary Novack, his wife, parties of the

first part, and John Turk and C. M. Parr, parties of the second part, witnesseth: That, for the rents, royalties, and agreements hereafter contained, said parties of the first part lease and let to said second parties for the term of ten years all their interest in and to the east one-half of the northeast one-quarter of section twenty-six in township two, south range seven east of Montana meridian, said lease to end on the 24th day of September, 1907. Said second parties agree to commence work upon said property as soon as practicable, and to continue work thereon to the best advantage and at such places and at such times as they deem for their own interest, and said second parties agree to pay said first parties five cents on each ton of coal extracted and sold, payments to be made monthly. Said second parties also agree to pay said first parties as a bonus one thousand dollars—four hundred dollars on or before thirty days and the balance thereafter as said first parties may demand. In consideration of the premises and of the sum of one dollar, in hand paid by said second parties, the receipt of which is hereby acknowledged, said first parties hereby undertake, promise, and agree that if at any time during the life of said lease said second parties pay, or cause to be paid, to the first parties the sum of two hundred thousand dollars, that then and in that event said first parties will by proper deed of conveyance convey and assure unto said second parties of [or?] their assigns all their right, title, and interest in and to said land and every part and parcel thereon, to wit, the east one-half of the northeast one-fourth of section twenty-six, township two, south range seven east.

"In witness whereof, said parties have hereunto set their hands and seals this 24th day of September, 1907.

"MIKE NOVACK.
"MARY NOVACK."

Exhibit B, attached to the answer, reads as follows:

"AGREEMENT OF TRUST.

"Know all men by these presents that I, John Turk, of Butte, Silver Bow county, Montana, for and in consideration of the

sum of fifteen hundred ($1,500) dollars to me in hand paid, and execution of a note to me for one thousand ($1,000) dollars, the receipt whereof is hereby acknowledged, do hereby agree and bind myself, my heirs, representatives and assigns, that I will pay and render unto John Rudman of the same city, county and state, an undivided one-tenth (1/10) part of all of the net profits, which I may hereafter receive, under and by virtue of the terms and conditions of that certain lease and agreement, made and entered into by and between Mike Novack and Mary Novack, his wife, as parties of the first part, and myself, the said John Turk and C. M. Parr, as parties of second part, and bearing date September 24, 1907, a copy of which is hereto attached and made a part hereof.

"I further agree to make all such payments immediately after settlement, and each and every settlement of the matters of business between myself and the said C. M. Parr under said lease and agreement, and that in the event of property described in said contract from Novack and wife be purchased and title passed. Therefore, I do agree to bind myself upon the execution and receiving of such deed or deeds for the title to the land set forth in said agreement to make, execute, acknowledge and deliver to the said John Rudman, his heirs, representatives or assigns a deed or deeds conveying to him, one-tenth (1/10) interest in and to said property.

"[Signed]   JOHN TURK."

The reply admits that the plaintiff represented to defendant that he was interested in the lease, but denies that he ever represented to defendant that the land was valuable as containing coal which could be mined at a great profit or any profit at all; "but, on the contrary, alleges that said plaintiff made an honest expression of his opinion to the defendant that the said land contained coal which could be mined at a profit." Plaintiff further admits that he induced the defendant to accompany him to a place where plaintiff represented the premises to be, and that, arriving at a point upon said premises, plaintiff pointed out the land to the defendant, "upon which said land there was

an excavation from which coal had been extracted and mined, and that plaintiff represented to defendant°that said excavation and place were upon the premises described in the lease; but denies that plaintiff ever represented that said premises were very valuable on account of the fact that they contained coal in great quantities and which could be mined at a great profit or any profit whatsoever; but plaintiff alleges to the contrary that he made an honest expression of his opinion to defendant that said premises contained deposits of coal which could be mined at a profit; admits that said place shown to defendant by plaintiff wherein coal was being and had been extracted was not upon the premises described in the lease; denies that, through the false and fraudulent representations made by plaintiff, the defendant was induced to sign the note mentioned, or that plaintiff induced defendant through the same false and fraudulent representations to accept the contracts and agreements mentioned in the answer, and denies that no consideration passed from plaintiff to defendant for the said note." The reply further alleges "that plaintiff and defendant voluntarily entered into a certain contract and agreement which said contract and agreement is the same Exhibit B, attached to defendant's answer, and that, in consideration thereof, defendant made the note mentioned, and defendant entered into said contract and agreement with the full and complete knowledge of all of the facts, and voluntarily, without any false or fraudulent representations on the part of plaintiff." Plaintiff further avers in said reply, as follows: "Admits that said place shown to defendant by plaintiff wherein coal was being mined was not upon the premises described in said lease; but whether or not the premises were valueless for coal mining, and did not contain coal which could be mined at a great profit, plaintiff has no knowledge or information sufficient to form a belief; * * * that at the time of making the contract (Exhibit A) plaintiff was of the honest belief and opinion that the said excavation from which coal was then being extracted and mined was situate on the premises described in the lease; that on or about the 13th

day of October, 1907, the premises were surveyed at the instance and request of plaintiff, and the excavation was thereupon found not to be included within the premises described in the lease; that on the 25th day of October, 1907, the lessors named in the lease, upon being informed of the mistake, made, executed, and delivered to plaintiff and one C. M. Parr, co-lessee named in said lease, a written consent to a change of the terms of said lease, and on the ———— day of October, 1907, plaintiff duly notified and informed the defendant of the mistake as aforesaid, and that the excavation was not included within the leased premises; that the plaintiff, in consideration thereof and of the mistake made thereby, offered to give and convey to the defendant a one-fourth interest, instead of a one-tenth interest, in and to the said lease and profits arising therefrom; that the defendant expressed his willingness and assent to said offer so made by plaintiff, and on the 11th day of March, 1908, the parties entered into a certain agreement of trust, a copy of which is annexed to this reply; that the defendant at the time of the making of said agreement of trust had a full and complete knowledge of all of the facts concerning and relating to the said premises, of the mistake as aforesaid, and of the change of the terms in said lease; and that the defendant entered into said agreement of trust freely, voluntarily, and of his own accord, and not through or by virtue of any false or fraudulent representations made by plaintiff to defendant, or any representations whatsoever.''

Exhibits A and B, attached to the reply, read as follows:

### EXHIBIT A.

"Timberline, Oct. 25th, 1907.

."We, Mike Novack and Mary Novack, his wife, hereby consent to a change of the terms of that certain lease and bond on coal land known as the east half of the N. E. $\frac{1}{4}$ of Sec. 26, Tp. 2 S. R. 7 east, as follows: Royalty to be five cents per ton, we to have no interest in lease and bond, changed from two hundred thousand dollars, to a price of ten thousand dollars, other conditions

to remain the same and the consideration of this change of terms is we were mistaken as to the land we owned and represented that a tunnel on the west half of the N. E. ¼ of Sec. 26, Tp. 2 S. R. 7 east on our land and C. M. Parr and John Turk believed and acted upon this representation and for a further consideration of one dollar to us paid by said parties we are named as second parties in said lease and bond, the receipt whereof is hereby acknowledged.

his

"[Signed]   MIKE X NOVACK.

mark

"MARY NOVACK.

"Witness: MIKE NOVACK."

### EXHIBIT B.

"Agreement of Trust.

"Know all men by these presents that I, John Turk, of the city of Butte, county of Silver Bow, state of Montana, for and in consideration of the sum of one thousand dollars ($1,000), a note of hand being executed and delivered to me for the same, and for the further consideration that John Rudman, of the same city, county, and state, share an equal expense in the operation of mining and premises hereinafter described in that certain lease and agreement, made and entered into between Mike Novack and Mary Novack, his wife, as parties of the second part, and bearing date September 24, 1907, a copy of which is hereto attached and made a part hereof, that I will pay and render unto the said John Rudman an undivided one-quarter (¼) part of all the net profits which I may receive hereafter under and by virtue of the said lease and agreement. I further agree to make all of such payments immediately after each and every settlement of the matters of business between myself and C. M. Parr under the said lease and agreement; and that in the event of the property described in said lease and agreement is purchased and title passed to C. M. Parr and myself, I agree to bind myself upon the execution and receiving of

deeds to the property in said lease to make, execute, and acknowledge and deliver to the said John Rudman, his heirs, representatives or assigns a deed or deeds conveying to him a one-quarter (¼) interest in and to said property.

"[Signed]    JOHN RUDMAN.

"JOHN TURK.

"Signed, sealed and delivered in the presence of John Barta, Butte, Montana, March 11, 1908."

At the trial the plaintiff testified that on the 18th or 19th of September, 1907, he took the defendant to the ground in question; that one Tony Hoff and he had been there prior to that time; that he did not know that the tunnel where the coal was being extracted was not on Novack's ground, and further said that two young surveyors whom he had taken to the ground concluded that the place where the coal was being mined was not upon the Novack ground, but that Novack still claimed that it was upon his ground. He said also that Rudman asked for an interest in the Novack lease; that, after the surveyors reported, he wrote to Rudman and informed him that the excavation was not upon the ground in which they were interested; and that he was "going to give him a one-fourth interest, instead of a one-tenth interest, and told him to give me an answer back if he was not satisfied, and he answered back that he was well satisfied." He testified that he and Rudman went to the property and Novack showed them over the premises, whereupon Rudman said that he was well satisfied with it, well satisfied that there was coal there; that he did not make any representations to Rudman at that time concerning the excavation or tunnel; that he worked upon the property from the middle of October to the latter part of February, 1908; that Rudman and himself stood one-half of the expenses and Parr stood one-half "for the forty acres." He also said: "We went up to attorney Barta's office to draw the agreement, because I didn't want to draw up any papers before Parr because he would not like to see it that I sell an interest."

Tony Hoff testified that he was at the town of Chestnut, in the vicinity of the land in question with the plaintiff on or about September 9, 1907; that people in a saloon told Turk at that time that the excavation where coal was being extracted was not upon Novack's ground, after which plaintiff did not care to go upon the premises at all; and that in the year 1909, in the city of Butte, Turk said, "there wasn't any coal there; that he dug a hole ninety feet, but he didn't find but a little, and he said, if it was diamonds, it would not amount to anything."

The defendant testified that he went to Chestnut and upon the premises in question, at the solicitation of the plaintiff. He further testified: "I paid Mr. Turk $1,500. As to this note, he says: 'You pay me some time after when you got the money. After some time I ship coal, you make money, and then you pay me this $1,000.' I did not want to pay him the cash. I said I would pay him after I got the money from the coal. When I went out on the ground, I went with Mr. Turk and his nephew, Joe Turk. They showed me the tunnel there. As to that tunnel, Mr. Turk says: 'Well,' he says, 'there is lots of coal here. We will make money out of it.' He said that this tunnel was on Novack's ground. I did not know anything about coal land. I did believe what Turk said, because he is my brother in law. I did believe that the tunnel was on Novack's ground. I believed it because Turk told me. After that, Turk came back in March, and he said that that tunnel was not on that ground. Q. And why did you put in your money there—because what Turk said, or what for? A. No; because what Turk say, because he was asking me for that, that I shall go in, he needs the money. You know he can't work it, he got no money. I got a few dollars, and he says: 'You give it to me. I give you one-tenth interest and go to work and ship coal.' When we made the last agreement on March 11, 1908, he said: 'Now, look, John, this coal tunnel is not on the ground, but I give you one-fourth here on the Novack ground.' And he says: 'If we get a little bit, John, we will get coal.'

And about the note he said: 'You pay me this note if I find coal.' If he found coal I was to pay the note. With that understanding I signed the note. We were good friends. I believed what he told me at that time. I believed everything he was telling me about that coal. I have been in Butte since 1887, and during that time I have owned mines and prospects. I have not sold and bought prospects except when I located by digging with Mr. Turk; that is all. I first heard of Novack's property in 1907, in the month of September, I believe. John Turk told me about the property. I knew that he had worked out in that country about eighteen years ago. He told me that himself. I did not suggest to Mr. Turk that I take a trip out there. As to who suggested that I take a trip out there, I will say that Turk came to my place, and I asked to go to Novack's place. He did not ask me to go. Q. You said that you wanted to go there. You told him that you wanted to see that property yourself, didn't you; that you wanted to see it yourself? A. Yes, sir; I like to see the country. On that afternoon, after we got up to Novack's house, Mr. Novack took us all over this country. Mr. Novack and Mr. Turk did this. Novack and Turk both took me around. We went together and Novack led the way. He led me around to show me the different things in his land. At that time Novack was working there on this tunnel, and he said he will ship coal and make a road. We did not go very much. We went to the tunnel, and we went in the tunnel. Mr. Turk was with us. He did not ask me to go in the tunnel. I went in myself on my own suggestion. When I went in that tunnel, I saw lots of coal; and I thought the tunnel looked like a pretty good proposition. I looked just as much as I pleased, and did whatever I pleased, in that tunnel. After I left the tunnel, I went right over this country that Mr. Novack said belonged to him. I believed what Novack told me, that those were leads, and looked around it and examined them. I saw coal in the tunnel. I heard that some other companies and other people were mining coal there. I knew that to be so. No one told me not

to look around Novack's property. No one hindered me. I
looked all through. Mr. Turk did not tell me I must not look
anywhere. He did not hurry me away. He gave me all the
time I wanted. I examined as much as I wanted to. At this
time we were not talking that we were going to go in the busi-
ness; that I was going to go in with him. I did not say to him:
'John, I would like to have an interest out here in this coal land
with you.' Q. You are positive of that, now? A. No; not
that I know. Q. You are not positive about it? A. No, I
do not recall whether I made that statement or not. After-
wards, when we got to Butte, Mr. Turk told me he would have
to get a lawyer to draw up a lease and bond on that property.
I do not remember that I offered him $2,500 for one-tenth of
his one-half interest. I do not remember. He says: 'Now, I
owe you a little bit of money. I take you in for $2,500.' I
said, 'All right.' So I then took a one-tenth interest for $2,500.
I came to plaintiff's attorney's office later, some time, and a
contract was drawn up, the contract which was introduced in
evidence here. I remember that and the note. I signed that
note. It was read over to me twice. The contract or that
agreement of trust was read over to me. The contract which
I signed was read over to me. Those particulars connected
with it were read over to me. I handed the note to Mr. Turk.
I gave it to him after I signed it. I did not at that time offer
to pay Mr. Turk the amount of the note. Mr. Turk said that
after he found the coal I shall pay him $1,000. Mr. Turk told
me at that time that I need not pay it then. I could pay it
at a later date. I signed the second contract, the last one, in
1908. I believe it was in March. The way I came to sign this
agreement was Mr. Turk came home. He was over in the Chest-
nut country, and he says: 'Well, John, don't you be so hard
on me.' He says: 'Now, I was working very hard over there,
and I didn't find any coal yet.' 'But,' he says, 'Now, if I get
a little bit down, I will get coal and give you one-fourth, and
you pay me if I find coal.' He said I should pay him if he
found coal. And I say: 'If it is this way, that you know it is

sure coal over there, well it is all right.' He told me that the
tunnel out there was not on Novack's land, and for that rea-
son he gave me, or was going to give me, a one-fourth interest
of his interest. He gave me a one-fourth interest of his inter-
est. From what I observed out there and knew that that tun-
nel was not on Novack's land, I was satisfied to enter into
this second agreement of trust, because he said: 'We will find
coal there.' I had been out and investigated for myself. No
one interfered with my investigations. I have not done con-
siderable mining. I do not know a mine at all. I had no ex-
perience at all in prospects and mines. Mr. Turk and I have
got a claim together now. As to whether or not I believe there
was coal in Novack's land, I will say from what I saw, and I
saw in the tunnel lots of coal. I never believed there was coal
on Novack's property. I did believe it because he showed the
tunnel over there. Q. Well, when he told you there was no
tunnel over there, then you entered the second contract just
the same, did you not? A. Yes, sir. Q. You knew at that
time that that tunnel was not on Novack's ground? You knew
it at that time? A. Yes; but Turk he told me. Before I signed
that second contract, Mr. Turk told me that tunnel was not on
Novack's ground. I was satisfied to go on and work there after
that. I was anxious to work that property at the time I signed
the second contract. Q. Didn't you shortly after you signed
this here second contract agree with Mr. Parr and Mr. Turk
to each put in $500 to work the Novack property? A. Yes;
we were talking that together. I do not know exactly that we
agreed to do that. I know what agreement we entered into
at that time, and that was the agreement. It was the agree-
ment to go out there and work that property. The second
lease was read to me and the papers attached to that contract
I think maybe were. I signed it after these were read to me.''

At the close of the testimony, the plaintiff made a motion for
a directed verdict, in terms as follows: ''Comes now the above-
named plaintiff, John Turk, and moves the court to direct a
verdict in the above-entitled court and cause, in favor of the

plaintiff, John Turk, and against the above-named defendant, John Rudman, as prayed for in plaintiff's complaint, upon the grounds and for the reasons: (1) That defendant's answer and cross-complaint do not state facts sufficient to constitute a defense or counterclaim to the cause of action set out in plaintiff's complaint. (2) That the case only presents questions of law. (3) That the defendant has not established fraud by a preponderance of the evidence. (4) That there is no testimony adduced on the part of the defendant sufficient to go to the jury.'' This motion was by the court sustained, and the jury returned a verdict for the plaintiff for the amount demanded in the complaint. Upon this verdict a judgment was entered for the plaintiff, from which judgment and an order overruling his motion for a new trial the defendant appealed.

It is necessary to assume that plaintiff had been informed by persons in Chestnut prior to the time when the parties hereto visited the coal ground that the tunnel was not upon Novack's land. He denies it, but Hoff affirms it. It was a question of fact for the jury whether such information had been received. Whether Turk told Rudman that the tunnel was on the Novack ground was also a matter for the jury to decide. If he did, the jury might have determined that he was guilty of actual fraud in connection with a matter which we deem material by virtue of sections 4978, 4980, Revised Codes, which read as follows:

"Sec. 4978. Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: (1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true. (2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true. (3) The suppression of that which is true, by one having knowledge or belief of the fact. (4) A promise made without

any intention of performing it; or (5) Any other act fitted to deceive.''

''Sec. 4980.  Actual fraud is always a question of fact.''

The fact that Rudman was afforded every opportunity to examine the ground is immaterial.  He declares, in effect, that his judgment as to the value of the ground was based upon the fact that he believed Turk's assertions that the tunnel was on the Novack land, and that coal was therein disclosed.  A consent which is not free is nevertheless not absolutely void.  It is, however, voidable. (See section 4972, Revised Codes.) Section 5062, Revised Codes, declares that a contract is extinguished by its rescission.  Section 5063 provides, in part, as follows: ''A party to a contract may rescind the same in the following cases only: (1) If the consent of the party rescinding  *  *  * was  *  *  * obtained through  *  *  * fraud, exercised by  *  *  * the party as to whom he rescinds.  *  *  * (2) If, through the fault of the party as to whom he rescinds the consideration for his obligation fails, in whole or in part. (3) If such consideration becomes entirely void from any cause. (4) If such consideration, before it is rendered to him, fails in a material respect, from any cause.'' Section 5065, Revised Codes, reads thus: ''Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules: (1) He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence or disability, and is aware of his right to rescind; and, (2) he must restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so.''

In the case at bar there is no claim made that the defendant was not an entirely free agent on March 11, 1908, when he executed the second so-called ''trust agreement.''  No fraud was being practiced upon him at that time, either actual or con-

structive. He had been upon the property and had examined the same, together with the tunnel which Novack claimed was upon the ground. Upon being informed by Turk that a mistake had been made and that the tunnel was not on the ground, he himself says: ''I was satisfied to go on and work after that. I was anxious to work that property at the time I signed the second contract.'' When Turk informed him that the tunnel was not on the ground, he had his opportunity to rescind the contract evidenced by the note. At that time he knew all of the facts, and, among others, the fact that, if the tunnel was not upon the Novack ground, then the only indications of coal in that ground were those observed by him outside of the tunnel. If he had remained mute, inquiry might properly be made as to whether he was aware of his right to rescind at this time; but this consideration becomes immaterial when his testimony discloses that, knowing all of the facts, he not only had no desire to rescind, but was anxious to go on with the work upon the ground. As additional evidence that he was satisfied with the contract as it stood on March 11, 1908, we have the fact that he paid $40 on the note on January 8, 1909, and $120 six days later, just prior to the commencement of this action, and that be allowed at least ten months to elapse without affirmative action on his part looking to a rescission of the contract. Our attention has not been called to any cases, by either party, directly applicable to this case, but we are of opinion that the statutes above quoted are so plain as to make the citation of decided cases unnecessary.

We find no error in the action of the court in directing a verdict for the plaintiff. The judgment and order appealed from are therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied November 5, 1910.