OTT, APPELLANT, *v.* PACE ET AL., RESPONDENTS.

(No. 2,944.)

(Submitted March 9, 1911.  Decided March 22, 1911.)

· [115 Pac. 37.]

*Contracts—Real Property—Rescission — Fraud — Complaint —*
*Ambiguity—Waiver—Laches—Duress.*

Contracts—Rescission—Fraud—Complaint—Insufficiency.
    1.  The complaint in an action to rescind a contract on the ground of fraud, from which the date when plaintiff discovered the facts upon which he relied for rescission could not be ascertained was vulnerable to a special demurrer because ambiguous, unintelligible and uncertain.

Same—Effect of Fraud.
    2.  Fraud in the inducement of a contract does not render it absolutely void, but only voidable at the option of the person defrauded.

Same—Fraud—Affirmance—Delay.
    3.  Where plaintiff after having been in possession of ranch property for about one year, under a contract of sale, entered into a substitute agreement which in terms annulled the former one and under which he gained additional advantages in the matter of making deferred payments, remained in possession for another period of eighteen months, made payment of a delinquent installment on the purchase price, harvested and sold crops, knowing at the time he made the second contract that he had been induced to enter into the original one through fraud on the part of defendants, he will be held to have elected to affirm the alleged fraudulent transaction, thus precluding his right to rescind.

Same—Substitution of New Contract—Waiver of Fraud.
    4.  By agreeing to the substitution of a new contract for one deemed by him to have been fraudulent, plaintiff waived the fraud which entered into the execution of the former one.

Same—Duress—What Does not Constitute.
    5.  Threats to enforce payment of promissory notes in the manner provided in a contract of sale in case of nonpayment, do not constitute duress.

Same—Fraudulent Representations—What are not.
    6.  Alleged false representations, to the effect that the proceeds from the sale of crops would meet deferred payments on a ranch, that those on the premises at the time of the sale were of a certain quality and value, and that the soil was rich and productive, were mere expressions of opinion, which, in the absence of special circumstances pleaded, tending to give them a different character, were not sufficient to constitute actionable fraud.

Same—Rescission—Laches.
    7.  Plaintiff's right to rescind on the ground of fraud *held* to have been barred by laches.

*Appeal from District Court, Jefferson County; Llew. L. Callaway, Judge.*

ACTION by Sebastian Ott against Ike E. O. Pace and others. From a judgment sustaining a general and special demurrer to the amended complaint, plaintiff appeals. Affirmed.

In behalf of Appellant, *Mr. Lewis A. Smith* submitted a brief and argued the cause orally.

The ground of demurrer that the complaint is ambiguous, uncertain and unintelligible cannot be considered, unless all three of the defects appeared in the complaint; that is, that it is uncertain and ambiguous and unintelligible, and if one of these grounds is lacking, the demurrer must be overruled. (*Kraner* v. *Hasley,* 82 Cal. 209, 22 Pac. 1137; *Wilhoit* v. *Cunningham,* 87 Cal. 453, 25 Pac. 675; *White* v. *Allatt,* 87 Cal. 245, 25 Pac. 420; *Greenebaum* v. *Taylor,* 102 Cal. 624, 36 Pac. 957.)

Does the amended complaint state a cause of action? We submit that it does. As stated in *Butte Hardware Co.* v. *Knox,* 28 Mont. 121, 72 Pac. 301, a case of actionable fraud and deceit is made out if it appears with reasonable certainty: (1) That certain representations which the purchaser had a right to rely upon were made by or at the instance of the vendor; (2) that they were false; (3) that the purchaser believed such representations to be true and did rely upon them, and was induced thereby to enter into the contract; and (4) that the purchaser suffered damages thereby. The amended complaint meets all of those requirements.

Nowhere does it appear even by inference that the plaintiff abandoned his right to rescind for the fraud; he alleges that as soon as he discovered the fraud and deceit of the defendants, he demanded relief at their hands, and that he made repeated demands upon them for this purpose, and was put off with false promises, and finally (becoming convinced that they had no intention of doing anything) he turned the property back to them and brought this action. "A demurrer insisting upon a lapse of time short of the statutory period will not be sustained, unless the complaint upon its face makes a clear case of unreasonable delay, upon the part of the complainant after the discovery of the fraud charged." (*Jones* v. *Slauson,* 33 Fed.

632; *Sheldon* v. *Packer Co.,* 8 Fed. 769, 10 Biss. 470; *Taylor* v. *National Bank,* 6 S. D. 511, 62 N. W. 99.)

Waiver is a question of fact (*Wilder* v. *Beede,* 119 Cal. 646, 51 Pac. 1083), and is largely one of intent. (*Pryor* v. *Foster,* 130 N. Y. 171, 29 N. E. 123.) The entering into the second contract does not show a waiver of the fraud. Plaintiff alleges facts explaining fully why this second contract was entered into. It cannot be inferred from the complaint that the plaintiff had at this time discovered all the facts concerning the fraud. He could not ascertain what the average yearly crop the land was capable of producing was, until he had given it a fair trial; this could not be done in one year or even in two years. In *Charbonnel* v. *Seabury,* 23 R. I. 543, 51 Atl. 208, where a dentist had purchased a half interest in a dental business represented to him to be worth $20,000 per year, when it was actually worth less than $5,000, the purchaser had worked in the business and under the contract for six months, and the court says: "The objection that plaintiff worked under the contract for a period of six months is also unsound, he was bound to work long enough to find out whether the statements were true."

*Mr. I. E. O. Pace,* appearing *pro se,* and *Mr. M. H. Parker,* submitted a brief in behalf of Respondents, and argued the cause orally.

The plaintiff nowhere in his complaint makes a direct and positive allegation that the defendants, or either of them, falsely and fraudulently made any representation. "Where a contract is attacked on the ground that it was procured through false representations or fraud, the opposing party is entitled to know from direct and consistent allegations of the pleading that he is called upon to defend against such charges." (*Butte Hardware Co.* v. *Knox,* 28 Mont. 111, 72 Pac. 301; *T. C. Power & Brother* v. *Turner,* 37 Mont. 521, 97 Pac. 950; *Colorado Springs Co.* v. *Wight,* 44 Colo. 179, 96 Pac. 820, 16 Ann. Cas. 644; *Kemmerer* v. *Pollard,* 15 Idaho, 34, 96 Pac. 206; *Oppenheimer* v. *Clunie,* 142 Cal. 313, 75 Pac. 899.)

Statements, no matter how strongly made, which show on their face that they are merely opinions, are not fraudulent representations. (1 Page on Contracts, sec. 96; *Butte Hardware Co.* v. *Knox, supra; Holton* v. *Noble,* 83 Cal. 7, 23 Pac. 58; *Rendell* v. *Scott,* 70 Cal. 514, 11 Pac. 779; *Crocker* v. *Manley,* 164 Ill. 282, 56 Am. St. Rep. 196, 45 N. E. 577, 18 Morr. Min. Rep. 485.) A statement as to what will happen in the future is clearly a matter of opinion, not of fact. Thus a statement as to the profits that would be made,·or dividends that would be declared in a given business, or one that a mine was rich in silver, that the ore on the dump would pay the value of the stock, and that large dividends would be paid, *etc.,* are mere predictions, and hence matters of opinion only. (1 Page on Contracts, sec. 98; *West Seattle etc.* v. *Herren,* 16 Wash. 665, 48 Pac. 341; *Akin* v. *Kellogg,* 119 N. Y. 441, 23 N. E. 1046.)

If after discovering the truth of the representations a party conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of and relief of all the misrepresentations. (*Evans et al.* v. *Duke,* 140 Cal. 22, 73 Pac. 732; *Oppenheimer* v. *Clunie,* 142·Cal. 313, 75 Pac. 899; *Greenwood* v. *Fenn,* 136 Ill. 146, 26 N. E. 487.) Substituting a new contract for the old one is a waiver of the fraud in the execution of the old contract. (*Kimball Co.* v. *Raw,* 7 Kan. App. 17, 51 Pac. 789; *Lee* v. *McClelland,* 120 Cal. 147, 52 Pac. 300.)

It is not duress to make threats which a person has a right to make. (*Kimball Co.* v. *Raw,* 7 Kan. App. 17, 51 Pac. 789; *McClair* v. *Wilson,* 18 Colo. 82, 31 Pac. 502.)

The mere fact, if such is a fact, that the plaintiff entered into an unwise or a foolish contract does not establish the existence of fraud. (1 Page on Contracts, sec. 87.)

The plaintiff complains that the defendants promised to procure someone to take the contract off his hands but failed to do so. A promise to do something in the future and a mere nonperformance is not fraud. (1 Page on Contracts, sec. 99; *Lawrence* v. *Gayety,* 78 Cal. 126, 12 Am. St. Rep. 29, 20 Pac. 382, 17 Morr. Min. Rep. 169.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This suit was brought to secure the cancellation of two certain contracts and the return of certain moneys paid under them. To the amended complaint a general and special demurrer was sustained, and plaintiff, electing to stand upon his pleading, suffered judgment to be entered against him, and has appealed to this court.

From the amended complaint we gather these facts: In August, 1907, defendants Pace and Woods owned and were in possession of some 634 acres of land near Whitehall, Montana, together with certain water rights and water ditches, also a leasehold interest in 160 acres of state land, and owned and possessed certain personal property consisting of crops then on the land, farm machinery, and livestock; that on August 20, 1907, plaintiff and Pace and Woods entered into a contract for the sale of the real estate and personal property by Pace and Woods to Ott, for the sum of $19,500, payable $5,000 in cash, $4,500 in six months, $5,000 in eighteen months, and $5,000 in two years, the deferred payments to be secured by the deposit of certain certificates representing shares of the capital stock of the Ritzville (Washington), flouring-mill; that the notes representing the deferred payments, the securities, and a warranty deed were to be deposited with the Whitehall State Bank as trustee for the parties; that the first payment was made, and plaintiff took possession of the property and harvested and used the crops of 1907; that, when the first installment note fell due, Ott was unable to meet the payment; that he was permitted to withdraw from the trustee certificates representing fifty-five shares of the mill stock, and these he sold for $6,033.20, and paid the delinquent installment; that on July 1, 1908, a new contract was entered into between Ott and the Pace-Woods Improvement Company, a corporation; that this new contract recites the existence of the former one; that the corporation had succeeded to all the rights and interests of Pace and Woods, and provides that the contract of August 20, 1907, ''is hereby set aside and an-

nulled and all parties released therefrom''; that the new contract provides for the release of the remaining shares of the mill stock to Ott, and fixes the payment of the balance due on the property in smaller installments and extending over a longer period of time; and that on December 23, 1909, Ott gave up possession of the property. The institution of this suit followed immediately.

It is alleged in the complaint that the first contract was procured by false representations on the part of Pace and Woods, in that they represented to plaintiff that the soil of the land in question was rich and productive; that the crops then on the place (August, 1907) consisted of 500 tons of hay of the value of $5,000, 600 sacks of potatoes of the value of $600, 4,000 bushels of oats of the value of $2,000, and eight acres of peas of great value for feeding stock; and that the average yearly crops theretofore raised on the premises equaled in amount and value the crops then on the premises. It is alleged that these representations were false; that the soil was rich and productive only in spots; that much of it was gumbo, in which nothing but greasewood and noxious weeds would grow; that the crops on the premises in August, 1907, consisted of only 150 tons of hay, which was practically valueless on account of the presence of large quantities of noxious weeds and grasses which rendered it unfit for stock or other purposes, only 1,385 bushels of oats and 100 sacks of potatoes, and that all of the crops did not exceed in value $800; that the statement of the amount and value of the crops theretofore raised on the premises was false, and that the average yield of said premises theretofore had not exceeded in value $800, and that the entire property did not exceed in value $5,000; that the plaintiff skillfully and zealously cultivated the premises, but that they could not be made to yield more than $800 per year, which sum was inadequate to defray the expense of cultivation and care; and that plaintiff placed on the premises improvements of the value of $1,257 and paid taxes and assessments to the amount of $247.05; that plaintiff was not familiar with the country or with the character of the soil or with the facts as to the yield of the premises; that he believed the representations made by Pace and Woods, relied on them,

and parted with his money on the faith of such representations. It is then alleged:

"Sixth. That, upon the discovery of the falsity of the said false and fraudulent representations, plaintiff demanded of the defendants that they make him whole and restore him to his position of August 20, 1907, and prior to the signing of said contract of August 20, 1907, and the payments made by him, as hereinbefore set forth, and offered to deliver said premises and everything of value received by him from said defendants, all of which said defendants failed and refused to do."

In paragraph 8 plaintiff alleges that on December 23, 1909, he again demanded of Pace and Woods and the defendant corporation that the money which he had theretofore paid be returned to him, and that the contracts be canceled, and notified the defendants that he rescinded such contracts, and thereupon surrendered up the premises, improved in value to an extent greater than the value of the crops taken by him.

Possibly, the allegations of paragraph 6 above can be referred in point of time to one of two dates: (1) To the time when plaintiff harvested and marketed the crop of 1907, which was some time prior to February 20, 1908; or (2) to December 23, 1909, the date mentioned in paragraph 8 above. But, if they cannot be construed as referring to either of the dates mentioned, then it cannot be gathered from the complaint when plaintiff discovered that he had been defrauded, or when he made the demand for restoration.

In paragraph 4 of the complaint appears this language: "And the compelling this plaintiff, under duress and fear as herein alleged, and by threats of instituting bankruptcy proceedings against him, and by false promises made by said defendants, Pace and Woods, to secure someone to purchase said premises, which promises were made by said defendants without any hope or expectation or intention of fulfilling them or attempting so to do, but simply as an additional means of getting this plaintiff to enter into said contract with said corporation, and as additional means of further entangling this plaintiff and making it more difficult for him to secure relief." These words baffle our at-

tempts to give them meaning. They do not appear to have any connection with the allegations preceding or following them. They do not constitute a sentence. There is not any subject, and they appear to be meaningless.

If, then, the allegations of paragraph 6 above cannot be construed as referring in point of time to either date we have [1] mentioned, the special demurrer should have been sustained, for the complaint is open to the charge of being ambiguous, unintelligible and uncertain. As against a general demurrer, it may be that the allegations of paragraph 6 above are sufficient (*Taylor* v. *National Bank*, 6 S. D. 511, 62 N. W. 99) ; but, when attacked by a special demurrer, they fail to meet the requirements of the law. Since plaintiff is seeking a rescission of these contracts, and the statute (Rev. Codes, sec. 5065) requires him to act promptly upon discovering the facts which entitle him to rescind, defendants had a right to know when such discovery was made; for, though plaintiff may have had just ground for rescission, his right might be lost by laches.

But, assuming that the allegations of paragraph 6 can be referred in point of time to one of the dates we have mentioned, we may then treat the language quoted from paragraph 4 as surplusage. First, then, assume that the plaintiff's allegations in paragraph 6 are construed to refer to the time when he harvested and sold the crop of 1907, which transpired on or before February 20, 1908, and we find from the complaint that thereafter he secured permission to withdraw fifty-five shares of the hypothecated mill stock; that he sold it and applied the proceeds to the payment of the installment due under the first contract; that on July 1, 1908, he entered into the new contract which in terms annuls the first one, and by the terms of which he gained advantages in having the hypothecated securities returned to him, and in securing more advantageous terms for the payment of the remaining installments. During all this time plaintiff remained in possession of the premises and used them and appropriated the 1907 crops to his own use. Since fraud in the [2] inducement of a contract does not make it void, but only voidable (*Turk* v. *Rudman,* 42 Mont. 1, 111 Pac. 739), it was

within the power of Ott to rescind or to treat the first contract as valid (1 Page on Contracts, sec. 139; 9 Cyc. 432, 436); and his continuing in possession of the property and his payment [3] of the delinquent installment after discovering the fraud amounted to an affirmance of the first contract and constituted a bar to a rescission. (*Ruhl* v. *Mott,* 120 Cal. 668, 53 Pac. 304; *Oppenheimer* v. *Clunie,* 142 Cal. 313, 75 Pac. 899; *Greenwood* v. *Fenn,* 136 Ill. 146, 26 N. E. 487; *Crooks* v. *Nippolt,* 44 Minn. 239, 46 N. W. 349; 2 Pomeroy's Equity Jurisprudence, sec. 897; 9 Cyc. 436.) In *Grymes* v. *Sanders,* 93 U. S. 55, 23 L. Ed. 798, the rule is stated as follows: ''Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had theretofore [4] subsisted.'' So, also, the substitution of the new contract for the old one amounted to a waiver of the fraud which entered into the execution of the old one. (*Kimball Co.* v. *Raw,* 7 Kan. App. 17, 51 Pac. 789; *Lee* v. *McClelland,* 120 Cal. 147, 52 Pac. 300.)

But it is alleged that the new contract was procured by duress, and apparently it is sought to charge that the payment of $6,033.20 was also made under duress. In the brief of appellant his counsel says that upon the complaint, ''it appears clearly that he entered into this second contract to prevent the forfeiture of his mill stock, which under the contract of purchase would be delivered by the bank to the defendants Pace and Woods (or the defendant Pace-Woods Improvement Company as the successor in interest of Pace and Woods) as their absolute property on the default of the plaintiff to meet any note when due.'' The first contract provides for its termination upon breach by Ott. It makes time of the essence of it, and provides that, if the installments are not paid promptly when due, the mill stock shall be delivered to Pace and Woods as their absolute

property.  According to the complaint, then, Pace and Woods [5] threatened to do only things which under the contract they had a right to do, and threats of that character do not constitute duress.  (Rev. Codes, sec. 4975; *Kimball Co.* v. *Raw,* above; *McClair* v. *Wilson,* 18 Colo. 82, 31 Pac. 502; 7 Current Law, 1201.)

Second, let us assume, however, that the allegations of paragraph 6 above should be construed as referring in point of time to December 23, 1909 (though this assumption seems absolutely unwarranted), and we have this situation: Plaintiff harvested and marketed the crop of 1907, and, before the first installment under the original contract fell due, was in full possession of the facts that the representations made by Pace and Woods with respect to the crop of 1907 were untrue.  In *Ruhl* v. *Mott,* above, the supreme court of California said: "It is true that where one is justified in relying, and in fact does rely, upon false representations, his right of action is not destroyed because means of knowledge were open to him.  In such a case no duty in law is devolved upon him to employ such means of knowledge.  But, when thereafter he discovers that he has been put upon and defrauded as to one material matter, notice is at once brought home to him that a man that has been false in one thing may have been false to him in all, and it becomes incumbent upon him to make full investigation.  A defrauded party has but one election to rescind, and he must exercise that election with reasonable promptness after discovering the fraud.  *  *  * Delay in rescission is evidence of a waiver of the fraud, and of an election to treat the contract as valid.  Any acts evincive of an intent to abide by the contract are evidence of an affirmance of the contract, and of a waiver of the right of rescission."

But plaintiff further proceeded in possession of the premises, planted the crops for 1908, made payment of the installment which had been delinquent since February 20 of that year, entered into the new contract of July 1, harvested and marketed the crop of 1908, planted and harvested the crop of 1909, and not until another payment was about to become due did he contend that he had been defrauded into making either contract.

Thus far we have treated the allegations of the complaint as charging actionable fraud in the particulars mentioned; but most of the charges are altogether insufficient. In *Butte Hardware Co.* v. *Knox,* 28 Mont. 111, 72 Pac. 301, this court said: "Mere expressions of opinion or of judgment do not, except in [6] particular cases, which must be shown by the pleading, constitute actionable fraud or false representations. Statements made by the owner of property as to the superior kind, quality or character of his possessions, do not of themselves constitute actionable fraud or false representations, though such statements may not accord with the truth." The only false representations which it is alleged Pace and Woods made are: (1) That the proceeds from the sale of the crops would meet the deferred payments as they accrued; (2) that the crops on the premises in August, 1907, were of certain quantity and value; (3) that the soil was rich and productive; and (4) that the yearly average yield from the premises theretofore had been 500 tons of hay of the value of $5,000, 600 sacks of potatoes of the value of $600, 4,000 bushels of oats of the value of $2,000, and eight acres of peas of great value for feeding stock. It is perfectly apparent at once that the first and second statements, if made, were nothing but expressions of opinion (1 Page on Contracts, sec. 98), and the same is generally true of representations of the character of the third one (*Butte Hardware Co.* v. *Knox,* above; *Tryce* v. *Dittus,* 199 Ill. 189, 65 N. E. 220; 1 Page on Contracts, sec. 96).

It fairly appears from the complaint that plaintiff was in Whitehall at or prior to the time the first contract was executed, and the transaction itself brought to his notice such facts as to put him on inquiry as to the quality of the soil. In fact, so far as the allegations of the complaint are concerned, plaintiff had the same opportunity to examine and determine the character of the soil before the contract was made as he had afterward. In the absence of any special circumstances pleaded tending to give a different character to the representations 1, 2, and 3 from that which appears on their face, we may dismiss them as not sufficient to show actionable fraud; and we have left but the

statements attributed to Pace and Woods, as to the extent and value of the crops theretofore grown on the premises.   Assuming, as we may do, that the plaintiff was entitled to a reasonable opportunity to determine the truth or falsity of those statements (*Charbonnel* v. *Seabury*, 23 R. I. 543, 51 Atl. 208), he fails to state what, if any, efforts he made, when he discovered that the representations were false, or whether these representations alone induced him to enter into the contracts.   He continued in possession of the property for three seasons, harvested three crops, and appropriated them to his own use, and, in the absence of allegations showing some excuse for the delay in claiming that he had been defrauded, we think his right, if any he had, [7]  should be held to be barred by laches; that he has failed to meet the requirements of the statute above which prescribes the conditions upon which he might have rescinded the contracts. (*Ruhl* v. *Mott*, above.)

Our conclusion is that the complaint is open to the objections raised by the general and special demurrer, and that the trial court's ruling was correct.

The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Smith concur.

