## McCONNELL, RESPONDENT, v. BLACKLEY, APPELLANT.

### (No. 5,056.)

### (Submitted March 6, 1923. Decided March 22, 1923.)

### [214 Pac. 64.]

*Promissory Notes—Contracts—Consideration—Sufficiency.*

Appeal—Rules of Supreme Court—Equity Cases—Transcript—Failure to Print, Cause for Dismissal.

1. Where counsel for appellant in an equity case in which a review of the evidence is necessary to a determination of the cause, in flagrant disregard of the rule of the supreme court requiring the transcript to be printed, files a typewritten one though conversant with the rule, the appeal is subject to dismissal.

Promissory Notes—Consideration—Sufficiency.

2. *Held,* in an action on a promissory note for $650, a defense to which was want of consideration, that where plaintiff, in possession of public land under a claim of right to desert entry and upon which he had made improvements consisting of about three miles of fencing, located defendants thereon, delivering possession and surrendering the improvements to them, defendants giving the note in payment, there was sufficient consideration for the instrument.

Contracts—Fraud—Failure of Prompt Rescission—Ratification.

3. A contract alleged to have been fraudulent must be promptly rescinded or it will be regarded as having been ratified.

Same—Courts must Enforce as Made.

4. Courts must enforce contracts as made, not make new ones for the parties, no matter how unreasonable the terms may appear and though defendant made a bad bargain.

*Appeal from District Court, Fergus County; Roy E. Ayers, Judge.*

ACTION by William McConnell against Dan Blackley. Judgment for plaintiff, and, from an order denying defendant a new trial, he appeals. Affirmed.

*Mr. E. K. Cheadle* and *Mr. Nik Langshausen,* for Appellant, submitted a brief; *Mr. Cheadle* argued the cause orally.

*Messrs. Worden & Grant,* for Respondent, submitted a brief; *Mr. Edgar G. Worden* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted by the plaintiff to recover from the defendant the sum of $560, together with interest thereon, from November 1, 1914, at the rate of eight per cent per annum, and costs of suit. The note was executed and delivered by the defendant June 1, 1914, for the sum of $650, upon which $90 was paid August 4, 1914. The defendant by answer admits the execution and delivery of the note, but alleges it was done without consideration. Fraud and misrepresentations by the plaintiff are alleged to have induced defendant to execute and deliver the note and to make the payment thereon of the sum of $90, and it is alleged such payment was wholly without consideration. A reply was filed to the answer by the plaintiff, denying all new matter alleged. Issue being thus joined, the cause was tried to a jury, which returned a verdict in plaintiff's favor for the sum of $560, with interest thereon from November 1, 1914, at the rate of eight per cent per annum. Judgment was entered upon the verdict, and the appeal is from an order denying the defendant a new trial.

At the conclusion of all of the evidence, both the plaintiff and the defendant made motions for a directed verdict, which were by the court denied. Error is predicated by the defendant on the denial of his motion.

But one question arises determinative of the case, *viz.*: Was there a valid consideration for the execution and delivery of the note?

Counsel for appellant in this case has again been guilty of [1] flagrant disregard of the rules of this court. Subdivision 1 of Rule 6 (64 Mont. lxiii, 202 Pac. viii) requires the transcript on appeal to be printed, where a review of the evidence is necessitated. We know that counsel for appellant in this case is conversant with the rule, and now give final warning that such offense may in the future be visited with dismissal of the appeal. As much as it may be regretted to deny substantial justice to a litigant on appeal, blame will rest with

counsel who fail to observe the rules. We have on several former occasions indicated that there·must be and is a limit to the patience of this court, and have cautioned attorneys "that the rules * * * 'should be honored by observance rather than dishonored by breach.'" (*Brockway* v. *Blair*, 53 Mont. 531, 165 Pac. 455; *Wing* v. *Brasher*, 59 Mont. 10, 194 Pac. 1106; *Cornner* v. *Hamilton*, 62 Mont. 239, 204 Pac. 489; *Samuell* v. *Moore Mercantile Co.*, 62 Mont. 232, 204 Pac. 376; *Cobb* v. *Warren*, 64 Mont. 10, 208 Pac. 928.) The record before us is not voluminous and has not imposed material burden on us in reading it; however, the rules are adopted and promulgated for a plain, definite purpose, and should be applied to records on appeal both large and small.

In this case it appears that, in the spring of the year 1914, [2] the defendant and his brother-in-law, one Enos,· were desirous of acquiring homesteads in Montana under the public land laws of the United States, and that the plaintiff and Samuel Anderson were then in the possession and occupancy, under claim of right to desert entry, of about 480 acres of open, unsurveyed public lands, upon which they had placed improvements consisting of about 2¾ miles of fencing and 80 acres were broken by plow. The land was by them fenced on three sides and joined a Mr. Ashley's fence on the west, thus inclosing it all. After taking possession of such lands in November, 1910, the plaintiff and his associate, Anderson, posted notices on the land each claiming the right of desert entry thereon to the extent of 160 acres by McConnell and 320 acres by Anderson; and they executed, acknowledged, and filed for record with the county recorder of Fergus county, on November 25, 1910, a so-called "ranch declaration," wherein and whereby they severally attempted to proclaim and publish to the world their respective rights of occupancy of the land and preference right of entry under the desert land laws of the United States. Aside from the declarations so recorded, the plaintiff testified that the land claimed by Anderson and himself comprised the north half of

section 13, township 16 north of range 28 east, and was held by them in common. Anderson constructed the fences and directed the plowing and planting of crops, the plaintiff advancing the required funds. In 1911 they planted the plowed area to wheat, but received no crop return, and after that year they used it merely for pasture.

The plaintiff was vested with authority to dispose of their joint possessory rights to the land and the improvements thereon, and shortly before the execution of the note, had taken the defendant and Enos to and upon this land for the purpose of locating them and selling to them the improvements. The plaintiff, McConnell, in rebuttal, testified: "I took them (Enos and Blackley) down and showed them over the land, and they were highly pleased with it, and they took and divided the ground to their own liking * * * I don't know just what parts they took, but anyhow they took the claims I had at that time. Q. And what, if any, authority did you have to locate those parties upon the portion of the claim claimed by Anderson? A. Mr. Anderson gave me the authority. Q. So that you located Enos and Blackley then upon this land claimed by you and Anderson together? A. Yes, sir. Q. Who was in possession of that land? A. We were. Q. Anderson and you together? A. Yes, sir. Q. Now after you made this deal and took this note, did you have anything to do with the filing made by Mr. Blackley in the county clerk's office? A. Yes; when we went down and looked the land over and came back, and we made the filings out and the note of the same time, and they took it up to the recorder's office here and had it recorded immediately at that time. Q. Both Mr. Enos and Mr. Blackley? A. Yes. Q. That was on the date of the note, was it—the 1st of June? A. On the date of the note. Q. Who had possession of this land at that time, from that time on? A. They had; they did."

Mr. Anderson testified: "Q. Now did you authorize Mr. McConnell to locate Mr. Enos and Mr. Blackley on this land?

A. Well, he came and told me, and wanted to know if I would sell my interest in it, and I told him I would; he told me he had two boys that wanted a homestead. I wasn't acquainted with the boys at the time, but I gave him authority to sell my interest. Q. And did he settle with you for this afterwards? A. Well, he hadn't settled with me because they haven't settled with him. Q. You have mutual accounts between you that you have not settled yet? A. Yes, sir.''

After the execution of the note in suit, the defendant and Enos each executed, acknowledged, and recorded with the county recorder like declarations of "ranch declaration" in form similar to those executed and theretofore filed by the plaintiff and Anderson, save that the defendant and Enos claimed the right of homestead entry. Thereafter the land was duly entered by the defendant and Enos in the United States Land Office, as homestead entries, and patents have since been issued to each of them. Can it be said under these facts that the note in question was without consideration? We think not. A negotiable promissory note, such as that involved herein, is deemed *prima facie* to have been issued for a valuable consideration (secs. 7512, 8431, and 10606, Rev. Codes 1921), and value is anything sufficient to' support a simple contract (*Id.*, sec. 8432). Here the value consisted of the plaintiff's knowledge of the location of the land, and his possession thereof, which he surrendered to the defendant, together with the improvements thereon. Further, the plaintiff took the defendant to the land for the latter's inspection and assisted the defendant in locating thereon, under claim of the right to homestead entry under the public land laws of the United States. After being thus placed in possession of the land, the defendant, with full knowledge of the facts, elected to stand on his agreement and retain all benefits received, so that he has since obtained patent to the land from the federal government. He cannot now be heard to repudiate the contract. "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to

all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." (*Id.*, sec. 7497.)

A contract must be promptly rescinded upon discovery [3] of fraud or it will be regarded as having been ratified. (*Ott* v. *Pace*, 43 Mont. 82, 115 Pac. 37; *Turk* v. *Rudman*, 42 Mont. 1, 111 Pac. 739.)

In a case involving a similar state of facts Mr. Chief Justice Brantly, speaking for this court, said: "Let it be conceded that the improvements upon the land were of small value. By the transfer, the defendant obtained the right to the immediate possession of the land, and thus a priority of right to make entry of it as a homestead. This was the purpose he sought to accomplish by his purchase. It was a right of substantial value; and though defendant agreed to pay an extravagant price for it, this is no reason why he should not keep his agreement." (*Hills* v. *Johnson*, 52 Mont. 65, 156 Pac. 122.)

In this instance the defendant contracted to pay the plain- [4] tiff for value, and whether he made a good or a bad bargain is not for the courts to determine. Rather it becomes the duty of the courts to enforce such contracts (*Best Mfg. Co.* v. *Hutton*, 49 Mont. 78, 141 Pac. 653; *Friesen* v. *Hart-Parr Co.*, 65 Mont. 373, 209 Pac. 986), not to make new ones for the parties, however unreasonable the terms may appear (*Frank* v. *Butte & Boulder Co.*, 48 Mont. 83, 135 Pac. 904; *Pearce* v. *Metropolitan Ins. Co.*, 57 Mont. 79, 186 Pac. 687; *State Bank of Darby* v. *Pew*, 59 Mont. 144, 195 Pac. 852; *Friesen* v. *Hart-Parr Co.*, *supra*; *Emerson-Brantingham Imp. Co.* v. *Raugstad*, 65 Mont. 297, 211 Pac. 305; *General Fire Extinguisher Co.* v. *Northwestern Auto Supply Co.*, 65 Mont. 371, 211 Pac. 308).. Merely because the defendant may have reason to regret his bargain affords him no ground to avoid the obligation of his contract.

Here the consideration was good because of the benefits conferred (sec. 7503, Rev. Codes 1921), and it was incumbent

upon the defendant to show want of consideration in order to invalidate the note (*Id.*, sec. 7513). This he has wholly failed to do. Accordingly the order is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.

Rehearing denied April 14, 1923.