The Guarantee Savings Loan and Investment Company, Respondent, v. Rachel W. J. Moore and John C. Shaw, Individually and as Executors, etc., of George Moore, Deceased, and Archibald T. Moore, Appellants, Impleaded with Others.

*Fraudulent contract of sale — defense thereto waived by payment of interest with knowledge of the fraud — vacation of an attachment — parties sued in their individual capacity and not as executors.*

Where a corporation, with full knowledge of the fraud practiced upon it in inducing it to enter into a contract for the purchase by it of certain shares of stock, pays to the other party to the contract a sum of money as interest upon the balance of the purchase price of the stock, such payment is a recognition of the continued existence and validity of the contract, and an abandonment of any previous attempted rescission thereof.

An application to vacate an attachment procured by a corporation will not be granted where it appears that the plaintiff (the corporation) may sustain its claim, that a contract entered into by it was *ultra vires*, that it remained executory throughout, and that the plaintiff paid money under it, thus tending to establish a cause of action for the restoration of the money paid.

Where, in such an action, the complaint avers that both the preliminary negotiations and the final arrangement were made between the plaintiff and three persons charged with the wrongdoing, two of whom were executors of an estate to which the shares of stock agreed to be sold belonged, the executors are properly sued as individuals. As executors they could not bind themselves in their executorial capacity, either by the fraudulent representations averred or by their acts or agreements in evasion of the law of the plaintiff's being.

Appeal by the defendants, Rachel W. J. Moore and John C. Shaw, individually, and Archibald T. Moore, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 9th day of November, 1898, denying their motion to vacate an attachment.

*Gratz Nathan*, for the appellants.

*Roger Foster*, for the respondent.

Barrett, J.:

The attachment here was sought to be vacated solely upon the ground that the complaint and affidavit failed to set forth a cause of action against the defendants named in the warrant. The rule is,

that upon applications of this character the attachment will be sustained, unless the complaint and affidavits used upon the motion clearly indicate that the plaintiff must ultimately fail. (*Romeo* v. *Garofalo*, 25 App. Div. 191; *Furbush* v. *Nye*, 17 id. 326; *Johnson* v. *Hardwood Door & Trim Co.*, 79 Hun, 407.) The question, then, is: Are the plaintiff's papers here hopelessly bad?

The claim is that the action is for moneys had and received by the defendants Rachel Moore, John C. Shaw and Archibald T. Moore individully, to the plaintiff's use. The moneys are alleged to have been paid by the plaintiff under a contract for the sale to it of certain shares of stock belonging to the estate of George Moore, deceased, Rachel Moore and John C. Shaw being the latter's executrix and executor. The sale was not made directly to the plaintiff. The averment is, that the plaintiff had no power under either its charter or the statutes under which it was incorporated to purchase these shares, and that as a cover for the real transaction the contract of sale was made to "a man of straw" (one Clegg); that the latter assigned the contract to the plaintiff's directors; that Shaw, who was one of these directors, signed a demand note for $10,000, payable to the order of the plaintiff; that this note was guaranteed by all the other directors; that the plaintiff took it as thus guaranteed, secured by the pledge of the contract of sale; that the plaintiff paid the amount named in the note, to wit, $10,000, to the defendants Rachel Moore and Shaw, as executrix and executor of George Moore, and that the form of the loan upon the security of the contract with Clegg was adopted, because the plaintiff, while not authorized to purchase stock, was authorized to lend money. The complaint appears to have been formulated upon two theories, *first*, that the contract was *ultra vires*, and, *second*, that it was procured by fraudulent representations on the part of Shaw, made with the knowledge and by the authority of Rachel and Archibald Moore. The case, upon the latter head, may be summarily disposed of. The plaintiff avers that, in consequence of its discovery of the fraud which had been practiced upon it, the defendants Rachel Moore and Shaw were notified upon the 30th day of September, 1894, that it rescinded the contract. With full knowledge of the fraud, thus pleaded, the plaintiff avers that upon the seventh day of the following December it paid the defendant Rachel Moore, as executrix, the

sum of $1,527.33 as interest upon the balance of the purchase price of the stock. This was a clear abandonment of the rescission. This interest money was paid under the contract. The payment was a recognition of the continued existence and validity of the contract, and in effect an assertion of the plaintiff's rights thereunder. The plaintiff seems to have had a realizing sense of this difficulty, for we observe an averment that, shortly before this last payment, " Shaw falsely and fraudulently represented to plaintiff *the said representations hereinbefore set forth,* and said payment was made on the belief by plaintiff that said representations were and that each of them was true." So that, with full knowledge of their falsity, the plaintiff again became the dupe of their repetition. It seems, too, that the scales never subsequently fell from its eyes, for there is no averment of another and later rescission upon another and later discovery of Shaw's repetitious misstatements. Upon this branch of the case the complaint is quite hopeless.

Upon the other theory, however, we think a cause of action may be found, hidden away and obscured in a vast amount of irrelevant matter, which reads like a bill in equity rather than a complaint at law. There is, at all events, a sufficient averment that the contract of sale was, as a matter of fact, made; that such contract was *ultra vires ;* that it remained executory throughout; and that the plaintiff paid money under it. Even in this aspect of the complaint, the document was undoubtedly open to attack. The directors, other than Shaw, were not proper parties, and there were many objectionable averments. The affidavits show, however, that the action is now at issue as to each of the defendants; and consequently all grounds of demurrer, save that the court is without jurisdiction, or that the complaint does not state facts sufficient to constitute a cause of action, have been waived. Notwithstanding many informalities and the presence of extraneous averments, there certainly seems to be enough in this complaint to make out a cause of action for the restoration of the moneys paid under the executory *ultra vires* contract.

The defendants contend that, even if this be so, the action will not lie against them individually. It is, however, averred in the complaint that both the preliminary negotiations and the final arrangement were between the plaintiff and Rachel Moore, Archi-

bald Moore and John C. Shaw. It is these three individuals who are charged with wrongdoing, not the estate of George Moore. It is true that they "*alleged*" to the plaintiff — such is the form of the averment — that the shares were owned by two of them as executor and executrix of George Moore, deceased. But the entire arrangement was with the three individually. "An arrangement was made," to quote an averment of the 5th paragraph, "by which it was agreed between said plaintiff *and said Shaw, Rachel and Archibald*, that the contract should be made for the sale of said stock to a man of straw." And further, we find an allegation in the 8th paragraph that all of the certificates of the shares "were never owned and never held by said executors," as set forth in the contract which they made with Clegg. The substance of the complaint on this head is that the three individuals, alleging (falsely, if this latter allegation be taken into consideration) that two of them, as executrix and executor of George Moore, owned the shares, induced the plaintiff to make a contract for their purchase, under which the plaintiff agreed to pay *them* "$10,000 in cash on or before the execution and delivery of the agreement, and the balance within two years from the date of the same, with interest at 5 per cent per annum." As to the payment of the $10,000, it is averred that $2,520 thereof was paid "to the defendants Shaw and Rachel." The remaining $7,500 was paid by a check to the order of "Rachel J. W. Moore, executrix," and delivered by her to Archibald Moore, who deposited it in a bank to his own credit; and the check was paid. This was a payment under the contract, as averred — that is, the contract between plaintiff and the three individuals. The form in which it was made was quite immaterial. The check was, as we have seen, to the order of Rachel Moore, executrix — a mere *descriptio personæ* — not to her order *as* executrix. But even if the latter form had been adopted, the estate would not have been bound thereby. There is no allegation that the money went into or became part of the estate. The estate made no bargain with the plaintiff; it sold to the plaintiff none of the assets of the deceased; and it received from the plaintiff nothing for those assets. The individuals made the bargain, and the individuals received the payment — a payment made in a particular, but unimportant, form. The estate of George Moore was in no sense responsible for any of

these acts of its representatives, either with regard to their contract, or with regard to what they received under their contract.   As such representatives they could not bind themselves in their executorial capacity, either by the fraudulent representations averred, or by their acts or agreements in evasion of the law of the plaintiff's being.

It follows that there are averments sufficient if proved to charge the defendants individually for the moneys which they have received under this void contract.   When the facts are fully presented upon the trial it may turn out that Archibald Moore is only liable for the moneys traced into his hands.   It is conceded that the effect of the averments as to him is that he received these moneys without consideration.   That brings him within the general scope of the action for money had and received.   Even if the averments here were sufficiently clear to absolve him from a recovery with respect to the payments with which he was not directly connected, the attachment should still be sustained even as against him.   His remedy was to move, not for an absolute discharge of the warrant, but for a reduction of the amount for which it was issued.   (*Sulzbacher* v. *J. Cawthra & Co.* [*Ltd.*], 14 Misc. Rep. 545 ; affirmed upon the opinion of DALY Ch. J., 148 N. Y. 755.)   The same observation applies to each of the other defendants.   As the papers, then, by no means clearly show that the plaintiff must ultimately fail in its action, we feel bound to sustain the attachment, notwithstanding the loose and inartistic manner in which these facts have been placed before the court.

The order appealed from should, therefore, be affirmed, with ten dollars costs and disbursements of the appeal.

VAN BRUNT, P. J., RUMSEY, INGRAHAM and McLAUGHLIN, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.