GUARANTEE SAVINGS, LOAN & INVESTMENT CO. v. MOORE et al.

(Supreme Court, Appellate Division, First Department.   December 9, 1898.)

1. SALES—RESCISSION—ABANDONMENT.
Where a buyer notified the sellers of its rescission of the sale because of fraud, but afterwards, with full knowledge of the fraud, paid the sellers the interest on the balance of the price, the rescission was abandoned, so that no cause of action can be founded on it.

2. EXECUTORS—FRAUD—INDIVIDUAL LIABILITY.
A complaint alleged that both the preliminary negotiations and the final arrangements for a sale were between plaintiff (the buyer) and three persons, two of whom were, respectively, executor and executrix of a will; that the latter stated to the buyer that the shares of stock to be sold were owned by two of them as the executor and executrix of a certain person; that the entire arrangements were with the three sellers individually; that the shares were never owned nor held by the executor and the executrix, as they stated; that a portion of the price was paid to the executors under the contract; that the balance was paid by a check to the order of "M., executrix."   The contract was alleged to have been fraudulent on the sellers' part, and ultra vires on the part of the buyer. Held to state a cause of action for money had and received against the executor and executrix as individuals, since the estate was in no way interested, in the absence of an allegation that any of the price became a part of the estate.

3. MONEY HAD AND RECEIVED—ACTION—WHEN LIES.
An action for money had and received lies to recover one's money received by defendant without consideration.

4. ATTACHMENTS—MOTION TO VACATE.
A motion to vacate an attachment will not be granted merely because movant is not liable for the entire amount for which the attachment was made.

Appeal from special term, New York county.

Action by the Guarantee Savings, Loan & Investment Company against Rachel W. J. Moore, individually and as executrix of the will of George Moore, deceased, and others.   From an order denying a motion to vacate an attachment against the individual prop-

erty of defendants Rachel and Archibald T. Moore and John C. Shaw, they appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Gratz Nathan, for appellants.

Roger Foster, for respondent.

BARRETT, J. The attachment here was sought to be vacated solely upon the ground that the complaint and affidavit failed to set forth a cause of action against the defendants named in the warrant. The rule is that, upon applications of this character, the attachment will be sustained unless the complaint and affidavits used upon the motion clearly indicate that the plaintiff must ultimately fail. Romeo v. Garofalo, 25 App. Div. 191, 49 N. Y. Supp. 114; Furbush v. Nye, 17 App. Div. 326, 45 N. Y. Supp. 214; Johnson v. Trim Co., 79 Hun, 407, 29 N. Y. Supp. 797. The question, then, is, are the plaintiff's papers here hopelessly bad?

The claim is that the action is for moneys had and received by the defendants Rachel Moore, John C. Shaw, and Archibald T. Moore, individually, to the plaintiff's use. The moneys are alleged to have been paid by the plaintiff under a contract for the sale to it of certain shares of stock belonging to the estate of George Moore, deceased; Rachel Moore and John C. Shaw being the latter's executrix and executor. The sale was made directly to the plaintiff. The averment is that the plaintiff had no power, under either its charter or the statutes under which it was incorporated, to purchase these shares, and that, as a cover for the real transaction, the contract of sale was made to "a man of straw" (one Clegg); that the latter assigned the contract to the plaintiff's directors; that Shaw, who was one of these directors, signed a demand note for $10,000, payable to the order of the plaintiff; that this note was guarantied by all the other directors; that the plaintiff took it as thus guarantied, secured by the pledge of the contract of sale; that the plaintiff paid the amount named in the note, to wit, $10,000, to the defendants Rachel Moore and Shaw, as executrix and executor of George Moore; and that the form of a loan upon the security of the contract with Clegg was adopted because the plaintiff, while not authorized to purchase stock, was authorized to lend money. The complaint appears to have been formulated upon two theories—First, that the contract was ultra vires; and, second, that it was procured by fraudulent representations on the part of Shaw, made with the knowledge and by the authority of Rachel and Archibald Moore. The case upon the latter head may be summarily disposed of. The plaintiff avers that, in consequence of its discovery of the fraud which had ben practiced upon it, the defendants Rachel Moore and Shaw were notified upon the 30th day of September, 1894, that it rescinded the contract. With full knowledge of the fraud, thus pleaded, the plaintiff avers that upon the 7th day of the following December it paid the defendant Rachel Moore, as executrix, the sum of $1,527.33 as interest upon the balance of the purchase price of the stock. This was a clear-

abandonment of the rescission. This interest money was paid un-
der the contract. The payment was a recognition of the continued
existence and validity of the contract, and, in effect, an assertion
of the plaintiff's rights thereunder. The plaintiff seems to have
had a realizing sense of this difficulty, for we observe an averment
that shortly before this last payment "Shaw falsely and fraudu-
lently represented to plaintiff the same representations hereinbefore
set forth, and said payment was made in the belief by plaintiff
that said representations were, and that each of them was, true."
So that, with full knowledge of their falsity, the plaintiff again
became the dupe of their repetition. It seems, too, that the scales
never subsequently fell from its eyes, for there is no averment
of another and later rescission upon another and later discovery
of Shaw's repetitious misstatements. Upon this branch of the case,
the complaint is quite hopeless. Upon the other theory, however,
we think a cause of action may be found, hidden away and obscured
in a vast amount of irrelevant matter, which reads like a bill in
equity rather than a complaint at law. There is, at all events, a
sufficient averment that the contract of sale was, as matter of fact,
made; that such contract was ultra vires: that it remained ex-
ecutory throughout; and that the plaintiff paid money under it.
Even in this aspect of the complaint, that document was undoubt-
edly open to attack. The directors other than Shaw were not
proper parties, and there were many objectionable averments. The
affidavits show, however, that the action is now at issue as to each
of the defendants; and consequently all grounds of demurrer,
save that the court is without jurisdiction, or that the complaint
does not state facts sufficient to constitute a cause of action, have
been waived. Notwithstanding many informalities and the pres-
ence of extraneous averments, there certainly seems to be enough
in this complaint to make out a cause of action for the restoration
of the moneys paid under the executory ultra vires contract.

The defendants contend that, even if this be so, the action will
not lie against them individually. It is, however, averred in the
complaint that both the preliminary negotiations and the final
arrangement were between the plaintiff and Rachel Moore, Archi-
bald Moore, and John C. Shaw. It is these three individuals who
are charged with wrongdoing, not the estate of George Moore.
It is true that they "alleged to" the plaintiff—such is the form of
the averment—that the shares were owned by two of them as ex-
ecutor and executrix of George Moore, deceased. But the entire
arrangement was with the three individually. "An arrangement
was made," to quote an averment of the fifth paragraph, "by which
it was agreed, between said plaintiff and said Shaw, Rachel, and
Archibald, that the contract should be made for the sale of said
stock to a man of straw." And, further, we find an allegation in
the eighth paragraph that all of the certificates of the shares "were
never owned and never held by said executors," as set forth in the
contract which they made with Clegg. The substance of the com-
plaint on this head is that the three individuals, alleging (falsely,
if this latter allegation be taken into consideration) that two of

them, as executrix and executor of George Moore, owned the shares, induced the plaintiff to make a contract for their purchase, under which the plaintiff agreed to pay them "$10,000 in cash on or before the execution and delivery of the agreement, and the balance within two years from the date of the same, with interest at 5 per cent. per annum." As to the payment of the $10,000, it is averred that $2,520 thereof was paid "to the defendants Shaw and Rachel." The remaining $7,500 was paid by a check to the order of "Rachel J. W. Moore, Executrix." This check was indorsed by "Rachel J. W. Moore, Executrix," and delivered by her to Archibald Moore, who deposited it in a bank to his own credit, and the check was paid. This was a payment under the contract, as averred; that is, the contract between plaintiff and the three individuals. The form in which it was made was quite immaterial. The check was, as we have seen, to the order of "Rachel Moore, Executrix,"—a mere descriptio personæ,—not to her order "as" executrix. But, even if the latter form had been adopted, the estate would not have been bound thereby. There is no allegation that the money went into or became part of the estate. The estate made no bargain with the plaintiff; it sold to the plaintiff none of the assets of the deceased; and it received from the plaintiff nothing for those assets. The individuals made the bargain, and the individuals received the payment,—a payment made in a particular, but unimportant, form. The estate of George Moore was in no sense responsible for any of these acts of its representatives, either with regard to their contract or with regard to what they received under their contract. As such representatives, they could not bind themselves in their executorial capacity, either by the fraudulent representations averred, or by their acts or agreements in evasion of the law of the plaintiff's being.

It follows that there are averments sufficient, if proved, to charge the defendants individually for the moneys which they have received under this void contract. When the acts are fully presented upon the trial, it may turn out that Archibald Moore is only liable for the moneys traced into his hands. It is conceded that the effect of the averments as to him is that he received these moneys without consideration. That brings him within the general scope of the action for money had and received. Even if the averments here were sufficiently clear to absolve him from a recovery with respect to the payments with which he was not directly connected, the attachment should still be sustained, even as against him. His remedy was to move, not for an absolute discharge of the warrant, but for a reduction of the amount for which it was issued. Sulzbacher v. J. Cawthra & Co., 14 Misc. Rep. 545, 36 N. Y. Supp. 8, affirmed upon the opinion of Daly, C. J., 148 N. Y. 755, 43 N. E. 990. The same observation applies to each of the other defendants. As the papers, then, by no means clearly show that the plaintiff must ultimately fail in its action, we feel bound to sustain the attachment, notwithstanding the loose and inartistic manner in which these facts have been placed before the court.

The order appealed from should therefore be affirmed, with $10 costs and disbursements of the appeal. All concur.