# TITLE GUARANTY AND SURETY COMPANY AND CITY OF CHICAGO

*vs.*

## EDWIN W. POE ET AL., RECEIVERS OF THE UNITED SURETY COMPANY.

*Positive and Negative Testimony—Contractor's Bond—Discharge of Surety—Tender of Performance—Condition.*

The positive testimony of credible witnesses as to a conversation is entitled to credence rather than the negative testimony of other alleged participants in the conversation that they did not recollect it.                                                    p. 451

The surety on a bond given by a contractor to a city, for the doing of certain work on a named contingency, is discharged if the contractor, upon the occurrence of such contingency, offers to do the work, but the city, instead of allowing him to do it, employs another contractor for the purpose.                     p. 451

That the contractor, in offering to do the work, insists as a condition of his doing it that he be given control of certain equipment used in the work, is immaterial if it was understood, at the time of the execution of the bond, that this equipment should be turned over to him in case the contingency occurred on which he was to do the work.                     p. 452

The city, to which a bond was given for the express purpose of protecting it from loss, having discharged the surety thereon from liability, by its failure to accept performance by the principal when tendered by him, a company for whose protection the bond was also given, by reason of its being surety on another bond given to the city, cannot assert a claim based on the former bond.                                                    p. 453

*Decided May 4th, 1921.*

Appeal from the Circuit Court of Baltimore City (HEUISLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*Dent, Dobyns & Freeman* and *Samuel K. Dennis*, submitting the cause on brief, for the appellants.

*Frank Ober*, with whom were *Janney, Stuart & Ober* on the brief, for the appellees.

THOMAS, J., delivered the opinion of the court.

On the 3rd of October, 1905, John P. Agnew, of Chicago, Illinois, entered into a contract with the City of Chicago by which he agreed to construct a concrete tunnel under the shoal water of Lake Michigan, according to the plans and specifications made a part of said contract, and under the direction and supervision of the commissioner of public works of the city. The contract provided that the work was to be completed on or before July 31st, 1906, and that Agnew was to receive $138.33 per lineal foot for the work completed and finally accepted by the commissioner of public works. The contract and specifications further provided that, if the progress of the work was satisfactory to the commissioner of public works, monthly estimates of the value of the work actually constructed should be made by him; that on or about the 6th day of the following month vouchers should be issued for eighty-five per cent. of such estimated value, and that the remaining fifteen per cent. should be reserved until the acceptance of the whole work. The faithful performance of said contract by Agnew was secured by a bond executed by him and the Title Guaranty and Surety Company of Scranton, Pennsylvania, as surety, to the City of Chicago in the sum of $379,024. In October, 1906, the City of Chicago authorized a modification of the contract of 1905 by extending the time for the completion of the work to May 31st, 1907, and Agnew accordingly executed a supplemental agreement to that effect and a new bond to the city, with the same guaranty company as surety, in the sum of $380,000, guaranteeing the performance of the original and supplemental contract. Shortly after the execution of said supplemental agreement and new bond, a dispute arose between Agnew and the commissioner of public works as to

the proper allowance for certain preliminary work spoken of in the record as "box-heading." In the estimates that had been made of the value of the work Agnew had been allowed twelve dollars per foot for this work. He insisted that he should be allowed twenty dollars per foot, but the commissioner of public works refused to make the additional allowance, and finally referred Joseph Hanreddy, another contractor, who went to see him in regard to the matter, to the Mayor. On the 12th of November, 1906, the City Council of Chicago passed the following order:

> "Ordered, That the Commissioner of Public Works be and he is hereby authorized and directed, in preparing estimates for payments to John P. Agnew under the contract for the construction of the Lawrence Avenue intake sewer, to estimate the cost of constructing the box heading at the rate of twenty dollars ($20) per lineal foot; provided, however, that before any such estimate is made to said Agnew, the said Agnew shall deliver to said Commissioner of Public Works a good and sufficient conveyance of all his right, title and interest in the plant used in the construction of said tunnel, said plant to become the property of the said Agnew whenever said tunnel is fully completed; and provided, further, that Joseph Hanreddy shall execute and deliver to the city his bond in the penal sum of forty thousand dollars ($40,000.00), with surety to be approved by the Commissioner of Public Works, conditioned that if the said Agnew shall for any reason fail to complete said tunnel according to the terms of his contract, he, the said Hanreddy, shall complete the said tunnel at a cost not exceeding the sum named in the contract between the said Agnew and the city."

In accordance with the order of the City Council, Agnew, on the 16th of November, 1906, assigned his plant to the city; Joseph Hanreddy, as principal, and the United Surety Company of Baltimore, Maryland, as surety, executed a bond to the city in the sum of $40,000; an estimate was

made allowing Agnew twenty dollars a foot for the box-heading, and he received the same, less the amount previously paid and the fifteen per cent. retained under the terms of the contract. Some time after obtaining the additional allowance for the box-heading, Agnew ceased to do any work under his contract, and the contract was finally cancelled by the commissioner of public works about the 12th of March, 1907. The Title Guaranty and Surety Company, surety on Agnew's bond, having declined to complete the work, the work was re-let by the city on the 6th of September, 1907, to another contractor, and was completed at a cost to the city of about $102,000 more than the amount of Agnew's contract. The city brought suit against Agnew and the Title Guaranty and Surety Company for that amount, and recovered a judgment against the company for $71,545.41. It is said in *City of Chicago* v. *Agnew*, 182 Ill. App. 504: "The case was tried before the court without a jury, and after deducting from the city's demand the additional amount paid for box-headings, and $10,800 paid to the second contractors as a bonus, the court entered judgment for the remainder, $71,545.41." That judgment was affirmed in *City of Chicago* v. *Agnew*, 264 Ill. 288. On the 18th of October, 1911, the City of Chicago filed a claim for the amount of Hanreddy's bond for $40,000 in the Circuit Court of Baltimore City against the receivers of the United Surety Company of Baltimore, and the Title Guaranty and Surety Company, after paying the judgment to the City of Chicago in 1914, and after having procured for its benefit an assignment of the judgment and of said bond, filed its claim for the amount of said bond against the receivers on the 6th of February, 1915. Upon the evidence produced in support of the claim, the auditor of the court below allowed it to the City of Chicago to the amount of $7,048. Thereafter the City of Chicago filed exceptions to the account of the auditor on the ground that the claim should have been allowed in full, and the Title Guaranty and Surety Company filed exceptions to said account on the ground (1) that the allowance made by the auditor should

have been made to it instead of the City of Chicago, and (2) on the ground that the claim should have been allowed to the amount of the bond and interest thereon. Thomas H. Bowles, as a creditor of the United Surety Company, also excepted to said allowance by the auditor on the ground that the claim was not supported by the evidence in the case. After a hearing, the court below overruled the exceptions of the City of Chicago and of the Title Guaranty and Surety Company; sustained the exceptions of Thomas H. Bowles and disallowed the claim, and from that order the City of Chicago and the Title Guaranty and Surety Company have brought this appeal.

The conditions of the bond to the City of Chicago, given by Hanreddy and the United Surety Company of Baltimore, upon which the claim in dispute is based, are as follows:

"Now, therefore, if the said Agnew shall fail to complete his work under said contract according to the terms and conditions of said contract, and the said Hanreddy shall, upon such failure, complete all work remaining undone, and at the same rate of cost that the said city has promised to pay to said Agnew, and if the said Hanreddy shall hold and save the City of Chicago harmless against any claim for constructing said tunnel over and above the amount so agreed by said city to be paid to said Agnew, then this obligation to be void; otherwise to be and remain in full force and effect."

Under the express terms and conditions of the bond, upon the failure of Agnew to perform his contract with the city in accordance with the terms and conditions thereof, it was not only the obligation but the right of Hanreddy to "complete all work remaining undone" at the same price the city had agreed to pay Agnew, so as to save the city from any claim for constructing the tunnel "over and above" the amount it agreed to pay Agnew for the work.

Joseph Hanreddy testified that he knew that the Agnew contract was going to be cancelled some time before it was

in fact cancelled, and that before it was cancelled by the commissioner of public works, and immediately after it was cancelled, he went to see the commissioner of public works and also the city engineer on several occasions and offered, and insisted upon being allowed, to complete the work in accordance with the terms of his bond, and that he urged upon them the necessity of his being permitted to complete the work at once in order to avoid the damage to, and the depreciation of, the work already done that would result from delay, and that the commissioner of public works told him that he would take the matter up with the engineering department and the law department of the city and let him know, but that he never heard anything further from the commissioner of public works, and that the city, instead of allowing him to complete the work, re-let it to another contractor. These positive statements of Hanreddy are supported by the testimony of Mr. Agnew and Mr. O. H. Huncke. Mr. Shaw, who was the city engineer, and Mr. O'Connell, who was the commissioner of public works in 1907, when called by the claimant to testify in 1914, could not recall the convervations testified to by Mr. Hanreddy, but stated that they might have occurred. It is said in 2 *Moore, Facts,* sec. 1190: "Ordinarily a witness' nonrecollection of a fact has no weight whatever against the testimony of a credible witness that, to his personal knowledge, it occurred," and the rule as to the relative weight of positive and negative evidence is also recognized in 17 *Cyc.* 801, and *Van Riswick* v. *Goodhue,* 50 Md. 57.

It is said in 21 *R. C. L.* 1046, that "the rule is well settled that a surety is discharged if a tender of payment made after the debt is due is refused by the creditor." Upon the same principle it is stated in 1 *Brandt, Suretyship and Guaranty* (3rd Ed.), sec. 274, that a surety was not bound for the completion of improvements where the lessor had, "although lawfully," prevented them from being completed by the lessee, and in the case of *Parker Vein Coal Co.* v. *O'Hern,* 8 Md. 201, the court said: "We take it to be very clear, that a party

cannot by his own act prevent another from performing his engagement and then complain that he has not kept its stipulations."

While not disputing the correctness of the general principle referred to, the appellants contend that Hanreddy's offer to complete the work was not within the terms of his bond because it "had coupled to it the requirement that the city should convey to him Agnew's plant." Assuming that this contention is in accordance with the proper construction of the evidence, there is no evidence in the case tending to show that Hanreddy's offer was rejected by the city on account of that condition, and the testimony of Hanreddy is that the officers of the city, to whom he applied for permission to complete the work, admitted that if he was permitted to do the work he would be entitled to the use of Agnew's plant. Moreover, the uncontradicted evidence in the case is to the effect that when Hanreddy appealed to the city officials to make Agnew the additional allowance for the box-headings referred to, and the city agreed to do so upon the conditions stated in the order of the City Council of November 12th, 1906, and when he executed the bond in question, it was with the understanding that if, by reason of Agnew's failure to comply with his contract, he was required to complete the work, he was to have the use of Agnew's plant. This evidence also tends to show that the understanding referred to was at least one of the reasons why Agnew was required to assign his plant to the city. Mr. Hanreddy testified: "The Mayor and the Commissioner of Public Works agreed if I would sign a bond to complete that work, give them the bond for its completion, they would give Agnew an increased amount of money as asked for; I said it will be necessary to have control of the machinery to complete the work. The Mayor told Mr. O'Connell to take the matter up with the corporation counsel's office to that end, and he took the matter up."

Mr. Huncke testified: "The conversation was to the effect that the city would have a council order entered permitting Hanreddy to complete the unfinished portion of the work on

the Lawrence Avenue tunnel, provided Agnew defaulted and that Hanreddy would secure the equipment that Agnew had left on the work as well as the reserves held by the city. Q. That is, that the Council order should provide that the plant and equipment should be turned over to the city, so that in the event of default—— A. The city would have the authority to turn them over to Hanreddy—the city could get the equipment and it would be assigned to (by) the city at the time of the default."

The Title Guaranty and Surety Company also contends that Hanreddy's bond was given for its protection as surety on Agnew's bond to the city for $380,000. This contention is based upon one of the recitals in Hanreddy's bond. Without stopping to consider the meaning and effect of the recital relied on, it is sufficient to say that the bond was *given to the city*, and for the express purpose of protecting *it* from any loss by reason of Agnew's failure to perform his contract. If Hanreddy had been permitted to complete the work without any loss to the city he would thereby have also protected the guaranty company from any loss as surety on Agnew's bond. But his obligation under the bond, and that of his surety, was subject to the condition that he would be allowed to complete the work, and if, as the evidence shows, the city refused to permit Hanreddy to perform his obligation under the bond, it thereby discharged the United Surety Company from all liability to it as surety. The bond, so far as the evidence shows, was given by Hanreddy and accepted by the city without the knowledge and consent of the Title Guaranty and Surety Company, and that was one of the grounds upon which the guaranty company denied liability in the case of *City of Chicago* v. *Agnew*, 264 Ill. 288. The city having, by its conduct, discharged the United Surety Company from liability to it as surety on Hanreddy's bond, the guaranty company cannot asert any claim based thereon.

It follows from what has been said that the order appealed from must be affirmed.

*Order affirmed, with costs.*